IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JANICE WYNN, | ) |
| Plaintiff, | ) |
| v. | ) CV-96-PT-2033-E |
| FLAGSTAR d/b/a/ HARDEES, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This cause comes on to be heard on the defendant's Motion for Summary Judgment filed on December 17, 1996.

### BACKGROUND[1]

Janice Wynn is a black female who claims that her former employer, the Hardees fast-food chain[2], discriminated against her based on her race and sex. Wynn worked for Hardees from October 1990 until March 1992 and again from September 1992 until November 1995. Wynn performed various jobs at Hardees, eventually making store management.

Hardees' general store management scheme ascends from management intern, breakfast manager, second assistant manager, first assistant manager, manager, to general manager. In 1990, Tony Teague, the store 300 general manager, promoted Wynn to "Quality Assurance

---

[1] All "facts" are stated favorably to plaintiff. They are not, of course, intended as findings of fact.

[2] Hardees is owned by Flagstar Enterprises, Inc. All references to Hardees in this opinion incorporate Flagstar.

1

Person" (QAP), an hourly wage, non-management position. On October 20, 1994, district leader Lamar Phillips[3] promoted Wynn to management intern. On January 26, 1995, Phillips transferred Wynn to store 297 in Lenlock, Alabama and promoted her to assistant manager two weeks later.

Wynn's purported troubles began in June 1995 when Phillips named Teresa Pisacrita, a white female, the Lenlock store manager, a position Wynn had wanted. Shortly afterwards, Wynn told Terry Estes, the Lenlock store general manager, that she wanted to quit management and resume her QAP position because she was unhappy with the comparative pay and workload of management. Estes, however, persuaded Wynn to remain in management. In October 1995, Pisacrita resigned from Hardees. Soon after Pisacrita quit, Estes told Wynn that Hardees was uniformly planning to change the assistant manager position from a salary position to an hourly wage position throughout the region. Wynn purportedly then asked for a promotion to the vacant manager position. Phillips, however, named Bernard Pryor, a white male, to the vacant manager position in Lenlock.[4]

After learning that Hardees named Pryor manager, Wynn left voice messages with Bonnie Corbett, the Flagstar Human Resources Manager, expressing her discontent. Corbett eventually spoke with Wynn and advised her to discuss her dissatisfaction with Phillips further. Wynn then met with Estes and Phillips to complain about not receiving the

---

[3] The district leader is a management position responsible for promoting persons to store level management positions and assigning all management to specific locations. Phillips is the district leader for 11 stores in Eastern Alabama.

[4] Wynn claims to have told both Phillips and Estes that she wanted the manager's position before Hardees hired either Pisacrita or Pryor and that she called Phillips at home to express her dissatisfaction about not receiving the manager position Pisacrita received.

2

promotion. At this meeting, Phillips defended his managerial choices and told Wynn that she did not need to work for him if she felt he was wrong. Wynn then accused Phillips of prejudice and said she was going to phone Bonnie Corbett again. At that point, Phillips put his hand in Wynn's face and told Estes, "See, I told you you can't knock no sense into her."[5] The meeting ended shortly afterwards and Phillips wrote down Corbett's number for Wynn to call again. Wynn phoned Corbett after the meeting but Corbett did not immediately return the call. Later that morning, Wynn decided to resign because she felt that Hardees was trying to force her out of her job. She gave Estes her store keys and told him that she could no longer work with Phillips.

## CONTENTIONS

### 1. Manager Promotions

Wynn contends that Phillips refused to promote her to manager twice because of her race and sex.[6] Hardees argues, however, that Wynn never "applied" for either promotion and, thus, cannot maintain her claim. Hardees contends, moreover, that it based its hiring decisions on legitimate nondiscriminatory reasons. Specifically, the company claims that it considered capability and performance history, including management experience, and concluded that Wynn was not the best candidate.

Wynn argues that these reasons are a mere pretext for unlawful discrimination. She

---

[5] Wynn depo., p.49.

[6] At the outset, the court concludes that Wynn has no sex discrimination claim relating to Hardees' decision to hire Pisacrita because, like Wynn, Pisacrita is female. The court, therefore, will only discuss Wynn's race discrimination claim relating to Pisacrita's hiring. Moreover, Wynn apparently asserts separate race and sexual discrimination claims. Consequently, there will be no discussion of a combined race and sex claim, *i.e.*, that Wynn was discriminated against because she is a black female.

3

claims that Phillips had a reputation for disapproving of female management and that Estes wanted to work with a male manager. Wynn claims, moreover, that Estes often wanted to know a work applicant's appearance, insinuating that Estes meant the applicant's race. Hardees argues, however, that it replaced Wynn with another black female, thus belying any claim of race discrimination.[7]

## 2. Constructive Discharge

Wynn contends that Hardees constructively discharged her the day she resigned. She claims that Phillip's conduct during their meeting earlier that day coupled with the Human Resources Manager's lack of response made her feel like she was being forced out. Wynn also claims that Hardees' decision to change the assistant manager position to an hourly-wage position suggested its attempts to end Wynn's employment.

Flagstar contends that Wynn's constructive discharge claim is beyond the scope of her EEOC charge because the charge did not mention a termination claim. The company argues that promotion denials are not sufficiently related to other forms of discrimination, such as terminations and constructive discharges. Wynn contends, however, that her constructive discharge claim closely relates to and reasonably stems from her EEOC charge of discrimination.

Regardless, Flagstar argues, Wynn's constructive discharge claim must fail as a matter of law. Flagstar argues that a reasonable person would not have felt compelled to resign because reasonable employees do not "assume the worst" or "jump to conclusions too fast."

---

[7] Wynn disputes that Hardees replaced her with a black female. Henrietta Wright, the black female who Hardees claims replaced Wynn, testified that she did not replace Wynn and never achieved the rank of assistant manager. The evidence is undisputed, however, that at some point Wright was a management intern.

4

Moreover, it contends, no other aggravating factors exist beyond those cited to support her Title VII claim and, as such, the claim fails as a matter of law. Mere promotion denials, it asserts, cannot support constructive discharge claims. Wynn contends, however, that the events at her meeting with Phillips and Estes were factors sufficiently aggravating to support her claim. In any event, Hardees claims that it replaced Wynn with another black female, thus rebutting any claim that Hardees deliberately sought to force her resignation by making Wynn's working conditions intolerable because of her race or sex.[8]

### 3. Pay Discrimination Claim

Wynn contends that Flagstar started a white assistant manager at a higher salary than she started earning in the same position because she is black. Flagstar contends, however, that Wynn has presented no evidence of the discrepancy other than that she "learned of" it when the white assistant manager quit.[9]

### 4. Discipline Claim

Wynn also contends that Hardees disciplined white employees differently than black employees. She claims that, at least twice, she was "written up" for cash shortages when two other white employees were not. She also contends that Hardees assigned her more difficult duties than it assigned to the white male assistant manager at her store. Specifically, Wynn claims that Hardees required her to do more rigorous duties such as replacing signs, replacing the outside bulletin board, and replacing window items. Hardees contends that Wynn merely

---

[8] See Fn.7.

[9] The plaintiff apparently concedes that any pay discrimination claim based on sex is time barred.

5

did job duties required of management. Moreover, Hardees argues, it only gives written reprimands to employees who have multiple cash shortages and no evidence exists that the comparators had multiple shortages.

### LEGAL STANDARD

On a motion for summary judgment, the court must assess the proof to see whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . .

" in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In making the determination of whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

Considering the above, this court must examine the evidence to decide if there exists a genuine issue of material fact.

## ANALYSIS

To prevail in an action alleging either sex or race discrimination by an employer, a plaintiff must prove discriminatory intent. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1854 n.15, 52 L. Ed.2d 396 (1977). Where, as here, the plaintiff relies on circumstantial evidence, the Supreme Court has established a legal framework that allows a court to infer discriminatory intent. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824, 36 L. Ed.2d 668 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S. Ct. 1089, 1093-95, 67 L. Ed.2d 207 (1981).

The familiar three-part test is neither rigid nor formalistic, however, and courts should adapt it to the given factual situation. U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 1482, 75 L. Ed.2d 403 (1983). In the promotion context, the plaintiff must first establish a prima facie case by:

> . . . proving that she is a member of a protected minority, was qualified for and applied for the promotion, was rejected despite these qualifications, and that other employees with equal or lesser qualifications who were not members of the protected minority were promoted.

Perryman v. Johnson Products Co. Inc., 698 F.2d 1138, 1142 n.7 (11th Cir. 1983) (citing Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980).

If the plaintiff establishes her prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment action. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824. In cases where the employer fails to meet this burden, judgment must be entered for the plaintiff as a matter of law. Burdine, 450 U.S. at 254, 101 S. Ct. at 1094. For the employer to meet its burden, however, the employer need not persuade the court that its proffered reasons are legitimate. Id. at 254-55, 101 S. Ct. at 1094. At this stage, employers need only produce a legitimate reason, not prove it. See id. Once the defendant has rebutted the employee's prima facie case, the plaintiff must then show by a preponderance of the evidence that a discriminatory intent motivated the employer's action. McDonnell Douglas, 411 U.S. at 804, 93 S. Ct. at 1825. The employee may accomplish this indirectly by showing that the employer's proffered explanation is pretextual, or directly by showing that a discriminatory reason more likely motivated the employer's action. Burdine, 450 U.S. at 256, 101 S. Ct. at 1095. Absent significantly probative evidence, summary judgment will be granted. Isenbergh v. Knight-Ridder Newspaper, 97 F.3d 436, 444 (11th Cir. 1996). Conclusory allegations of discrimination, without more, are insufficient to raise an inference of pretext or intentional discrimination where the employer offers extensive evidence of legitimate,

8

nondiscriminatory reasons for its actions. Isenbergh, 97 F.3d at 444. The paramount inquiry therefore remains whether the employee has offered evidence sufficient to create a reasonable inference that the employer intentionally discriminated against her.[10]

Wynn claims that Hardees twice failed to promote her to manager because of her race and gender.[11] In analyzing Wynn's claims, the court will first examine her prima facie case. Wynn satisfies the first prong because she is female and black, both protected classes. Hardees contends that Wynn fails the second prong because she did not "apply" for either open position. Although Hardees notes that it has no formal application process, the company claims that Wynn failed to tell Phillips that she wanted the job. Wynn disputes this contention and claims that she often told Phillips and Estes that she was interested in the manager position. She claims she called Phillips at home after being passed over for Pisacrita to voice her displeasure. In any event, Phillips testified that he knew Wynn was interested in moving up in management from the time he promoted her to intern.[12] The court cannot conclude, therefore, that Wynn did not "apply" for the manager position nor that Hardees was unaware of her wish to become manager. Wynn also satisfies the third and fourth prongs of her prima facie case because she did not receive the promotion and,

---

[10] To survive a summary judgment motion, the employee must present concrete evidence in the form of specific facts that show that the defendant's proffered reasons are pretext. The fact that the employer's decision is unfair is inadequate to survive a properly supported summary judgment motion. Courts, moreover, generally have no authority to second guess managerial decisions made in good faith.

[11] Wynn claims that Hardees based its decision to hire Pisacrita, a white female, on racial grounds. She claims that Hardees based its decision to hire Pryor on racial and gender grounds.

[12] Phillips depo., p.78-79.

9

arguably, other equally or lesser qualified people were promoted.[13] The court concludes, consequently, that Wynn has established her prima facie case.[14]

The burden now shifts to Hardees to articulate some legitimate, nondiscriminatory reason for not promoting Wynn to manager. Hardees contends that Phillips considered each candidate's capability and performance history, including management experience, and concluded that Wynn was not the best candidate. In promoting Pisacrita, Hardees considered that she had three years of management experience with Quincy's, another Flagstar owned restaurant, that included one year in a "manager" position. Pisacrita also had three years of general management experience with another fast-food restaurant. As to Pryor, Hardees notes that he had more than fifteen years of supervisory experience in the military, and other management experience in sales.[15] Hardees contends that Pryor's past work history gave him strong leadership abilities and the discipline necessary to manage at Hardees successfully. By contrast, Hardees claims, Wynn had no manager or general manager experience and had only been an assistant manager for five months when Pisacrita received the position. The court concludes that Hardees has presented legitimate nondiscriminatory reasons for its decisions to promote Pisacrita and Pryor instead of Wynn.

Wynn claims, however, that Hardees' purported legitimate reasons are mere pretext for otherwise unlawful discrimination. She claims that she was as qualified, or more

---

[13] Wynn disputes the qualifications of the two individuals who received the manager promotions. These contentions will be discussed within the context of Hardees' overall justification for its hiring decisions.

[14] Interestingly, Hardees also failed to promote the senior assistant manager, a white male, when it hired Pisacrita.

[15] There is conflicting testimony whether Pryor had earlier restaurant experience.

qualified, than Pisacrita and Pryor because neither had previous experience at Hardees. Wynn notes that she had five years experience there. As to Hardees' naming of Pryor as manager, Wynn argues that he had just attended the same training seminar that she had previously attended. She claims that Pryor's relative inexperience compared with her five years at Hardees establishes unlawful discrimination. This very argument was rejected, however, in McCarthney v. Griffin-Spalding County Bd. of Educ., 791 F.2d 1549 (11th Cir. 1986). In McCarthney, a teacher alleged that her employer twice failed to promote her to a principalship position because she was a woman. McCarthney, 791 F.2d at 1550. The school superintendent claimed that he considered both objective and subjective criteria in deciding to promote males to the positions instead of the plaintiff. Id. at 1551. The plaintiff challenged the superintendent's testimony, asserting that the evidence showed discrimination because she was more qualified than the male applicants. Id. at 1552. The court rejected this contention and concluded:

> Even assuming that the evidence demonstrated [the plaintiff] was the most qualified person for the available positions, this does not of itself refute [the superintendents] testimony that [plaintiff's] gender played no role in his decision. Title VII does not require an employer to hire or promote the most qualified applicant; it only requires that the employer make such decisions without regard to . . . sex . . . . Although failure to hire the most qualified applicant may be circumstantial evidence of discrimination, standing alone it does not [establish discrimination].

Id. at 1552. Under the present facts, the court concludes that any differences between the candidates' respective qualifications may be evidence of a discriminatory intent, but falls short of rebutting Hardees legitimate nondiscriminatory reasons.

To bolster her claim that Hardees sexually discriminated against her in naming Pryor

11

as manager, Wynn also claims that Phillips had a reputation for disapproving of women in management.[16] In further support of her claim, Wynn claims that Estes routinely said the word "bitch." She claims, moreover that, after Pisacrita quit, Pisacrita said that Estes had said that he was glad Pisacrita was gone because he then "[had] a man in management."[17]

The court concludes that Wynn has not produced concrete evidence in the form of specific facts to show that the defendant's proffered reason for not promoting her is pretext for sex discrimination. Wynn's assertion that Phillips had a reputation for disliking women management is not supported by any specific evidence other than her generalized conclusions and inadmissible hearsay evidence. Mere assertions that one has such a widely known reputation, without concrete evidence to establish that reputation, are attenuated and not significantly probative. This is the situation as presented here. Wynn has produced no evidence of any episodes showing that Phillips acted sexist toward her,[18] or anyone else. The evidence instead shows that of fourteen managerial promotions at stores 297 and 300 in the past two years, Phillips awarded twelve of those promotions to females.[19]

Wynn's evidence as to Estes' purported comments is also not significantly probative of any intent to discriminate against her. No evidence exists in the record that Estes ever

---

[16] Wynn claims that she learned this from Sam Nichols, another employee. Wynn testified that: "A lot of people, all the ladies knew, Samuel Nichols told everybody that, that him and Lamar discussed that he didn't care for women being in authority." Wynn depo., p.57.

[17] In her affidavit, Wynn claims that Estes told "[Pisacrita] that he was glad she was leaving, because now he could get a man in management and get rid of the 'whiny women.' Wynn affidavit, ¶ 15. Wynn, however, never mentioned the comment about 'whiny women' in her deposition when discussing the matter.

[18] The plaintiff's base complaint notwithstanding.

[19] As in the race context, statistics alone do not prove nor disprove unlawful discrimination. Relevant statistics are, however, significantly probative.

called Wynn a "bitch" nor that he acted sexist toward her.[20] Assuming that Estes regularly uttered the word "bitch,"[21] that factor does not provide much proof of gender discrimination against Wynn because no similar conduct was directed toward her. The court agrees with the Eighth Circuit's Kriss decision in that the court stated, "[c]alling a particular person ugly or using an epithet characterizing a person as unpleasant is not particularly probative of whether someone would refuse to promote someone else for improper reasons." Kriss v. Sprint Communications Co., Ltd. Partnership, 58 F.3d at 1281. The court concludes, moreover, that any comments Estes may have made to Pisacrita are too far removed from any decision concerning Wynn to have much relevance. Pisacrita said the purported comment after she resigned from Hardees and Pryor became manager.[22] To attribute any discriminatory motive toward Wynn from this comment would be conjecture and mere guesswork, as the comment was apparently intended as derogatory to Pisacrita.

Wynn has presented no evidence of conduct or statements by Hardees personnel that reflects a discriminatory attitude toward her in particular. Wynn has failed, moreover, to disprove Hardees' reasons by setting forth specific facts showing that a genuine issue exists to whether gender played a substantial factor, if any, in Hardees' decision not to promote her.

---

[20] The defendant cites language from Kriss v. Sprint Communications Co., Ltd. Partnership, 58 F.3d 1276 (8th Cir. 1995) in which the court stated, in part: ". . . the word "bitch," it seems to us, is not an indication of a general misogynist attitude. Rather, it is a crude, gender-specific vulgarity, which in this case was directed toward only one woman, rather than women in general." While the court does not adopt this rationale, the present case does not present facts sufficient for the court to conclude that a general misogynist attitude existed at the named Hardees stores.

[21] For purposes of considering the propriety of summary judgment, the court assumes that Estes made such statements. See Mauter v. Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987).

[22] Pisacrita purportedly made this comment to Wynn over a month after she left Hardees. Further, it is inadmissible hearsay evidence.

13

The court concludes, therefore, that the record does not reasonably support a finding of Title VII intentional gender discrimination. The court will accordingly grant summary judgment on these claim(s).

The court also concludes that Wynn has failed to present any evidence that race played a role in Hardees' decisions to hire Pisacrita or Pryor. Assuming that Wynn has established her prima facie case, Hardees has again presented legitimate, nondiscriminatory reasons for its hiring decisions. Beyond explaining its decisions, Hardees has presented evidence showing that it awarded eight out of fourteen managerial positions available in the last two years at the stores where Wynn worked to blacks.

Wynn attempts to discredit Hardees' reasons and accompanying evidence as pretextual. As her support, Wynn claims that Estes routinely asked about a job applicant's appearance upon receiving an application. Other than speculating that Estes wanted to know an applicant's race, Wynn testified that she had no idea why he asked.[23] She testified, moreover, that Estes never asked about race. The court further notes that Estes who, at least tacitly, was willing to promote Wynn to management initially, would not likely refuse to promote Wynn later because she is black.[24] It was Estes, moreover, who, according to Wynn, convinced her to remain in management when she said she wanted to resume her hourly wage

---

[23] Wynn depo., pp. 121-23.

[24] Wynn testified that she did not receive the manager promotion at first because "Terry [Estes] talked to Mr. Phillips . . .[and] from my understanding, Terry told Mr. Phillips that he didn't feel like I was ready for the management position and thats why Teresa [Pisacrita] got it." Wynn depo., p.24. Assuming that Estes played a role in the hiring process at this stage, a logical inference arises that he, the general manager, played a part when Wynn received her own promotion to management level. Phillips testified, however, that "No other manager at store 297 or any other store had any involvement in the selection of Pisacrita or Pryor for the manager position." Phillips Decl., ¶ 9.

14

position.

Wynn's other evidence is similarly too distant to be highly probative of race discrimination. She submits the testimony of LaShondra Harper West, another black Hardees manager, who claims that Estes told her he would burn a cross in her yard.[25] While this comment is disturbing, it has little relevance to any decisions, promotion based or otherwise, involving the plaintiff. Wynn also claims that Hardees violated company policy by not giving her a written evaluation every six months. She notes that she only received one evaluation in her five years with Hardees. Again, the plaintiff has failed to create, and the court cannot find, a nexus showing the relevance in this evidence to any racially based hiring decisions regarding Wynn. Wynn has submitted no evidence showing that others received the required evaluations or that Hardees had an ulterior motive in not evaluating Wynn. Poor business practices, without more, offer very little inference of race discrimination. Wynn's other evidence is similarly too attenuated, even in the aggregate, to present a genuine issue of material fact as to Hardees purported discriminatory intent.[26] The court will accordingly grant summary judgment on these claim(s).[27]

---

[25] In her brief, the plaintiff states that "Terry Estes, a white male and a General Manager at Wynn's store threatened to burn a cross in her yard." Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p.6. Not to diminish the import of the accusation, but a complete review of Harper's testimony reveals, however, that she did not tell anyone about the purported comment at the time it happened and waited until later that night to tell the closing manager at her store. Harper apparently never attempted to inform anyone in higher management about the comment nor sought reprimand for Estes.

[26] None of Wynn's evidence relates to her experiences with Hardees. All other evidence revolves around other employees and, in some instances, other Hardees stores. Wynn attempts to bolster her own allegations with unrelated allegations involving another plaintiff represented by the same counsel. This evidence amounts to random and sporadic instances where a discriminatory intent might be inferred against other Hardees employees.

[27] "Where the defendant's explanation lacks credibility or where discrimination is the more likely motive, a case is made for pretext. If the employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail." Clark v. Huntsville City Bd. of Educ., 717 F.2d 525, 527 (11th Cir. 1983).

15

### 2. Constructive Discharge

In Kilgore v. Thompson & Brock Management, Inc., 93 F.3d 752 (11th Cir. 1996), the Eleventh Circuit recently affirmed a district court's order granting summary judgment on the plaintiff's constructive discharge claim and, in doing so, confirmed the narrow limits of such claims. To prevail in a constructive discharge claim, the employee must prove that her working conditions were so intolerable and onerous that a reasonable person in her position would have felt compelled to resign. E.g., Kilgore, 93 F.3d at 754. The Eleventh Circuit has traditionally required a high degree of deterioration in an employee's working conditions to show constructive discharge. Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991). A constructive discharge will generally not be found if the employee does not give the employer sufficient time to remedy the situation. Kilgore, 93 F.3d at 754.

At the outset, the court concludes that Wynn's constructive discharge claim reasonably relates to the events specified in her EEOC charge and, thus, is not procedurally barred. Considering that the charge contains the date of November 23, 1995 as the date the last discrimination took place, the day Wynn resigned, her constructive discharge claim can reasonably be expected to grow out of the claimed discrimination. See Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970). The court's conclusion does not place the defendant in an untenable or unforeseen position.

Wynn contends that the events at her meeting with Phillips and Estes on the day she resigned, coupled with the Human Resources Director's lack of response, compelled her to resign. The Eleventh Circuit has ruled that "[p]art of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast."

16

Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987). The court concludes that Wynn did not act as a reasonable employee in resigning and that Hardees did not make her working conditions deliberately intolerable. Phillips never threatened to fire her and only said upon being confronted that if Wynn did not approve of his decisions, she should not work for him. Wynn has submitted no evidence that Phillips deliberately sought to force Wynn's resignation or that he would purposely alter her job in any way - a prerequisite for a finding of constructive discharge. Wynn has submitted no evidence, moreover, showing that Hardees would refuse to consider her for future promotions. An unpleasant or difficult work environment is insufficient to support such a finding. Instead of resigning, Wynn could have waited for a response from the Human Resources Director and acted accordingly. She chose instead the most drastic of her options and quit. The court concludes that the Fourth Circuit ruling in Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1072 (4th Cir. 1993) is instructive on dealing with events similar to those that occurred at Wynn's meeting with Phillips and Estes:

> . . . we are of opinion that the district court properly found no genuine issue of material fact over whether [the plaintiff's] resignation . . . was the result of working conditions so intolerable that a reasonable person of reasonable sensibilities would be compelled to quit. Though the behavior of the individual defendants was hardly exemplary, isolated incidents involving raised voices and flaring tempers . . . simply do not rise to the level of a calculated effort to force her resignation.

Under the present facts, the court similarly concludes that the events of the November meeting were insufficient to compel a reasonable person to resign abruptly. Although Wynn was disappointed at not receiving a promotion, and Phillips may not have acted totally appropriately, these events did not create a situation so deliberately intolerable that a

17

reasonable person would feel compelled to resign. If every person who feels that she has a claim of discrimination simply quits her job, the EEOC process and possible later court action would be undermined. Summary judgment will accordingly be granted on this claim.[28]

### 3. Pay Discrimination[29]

Wynn contends that Hardees paid a white male more when he was first named an assistant manager than it paid her when she first took the same position. Specifically, Wynn claims that Hardees paid Jody Robison, who is white, $323.00 per week while she made only $275.00 per week. Other than her conclusory allegation in both her complaint and subsequent affidavit, Wynn has presented no evidence supporting this claim.

As noted above, the purpose of summary judgment is to pierce the pleadings and assess the proof to decide if there is a genuine need for trial. "Forbidding reliance upon pleadings precludes a party from choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." Resolution Trust Corp. v. Dunmar Corp., 43 F. 3d 587, 592 (11th Cir. 1995). Thus, "[w]hen a motion for summary judgment is properly supported, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must, through affidavits or as otherwise provided in Fed.R.Civ.P. 56,

---

[28] Wynn's allegation that the defendant "threatened to reduce her position from a salaried one to an hourly one" is overstated and out of context as supportive of her constructive discharge claim. The uncontroverted evidence is that all assistant manager positions in the region were subject to the pending change. There is no evidence that Hardees deliberately singled Wynn out for the change.

[29] Wynn concedes that her pay discrimination claim is based only from her 42 U.S.C. § 1981 claim, as any gender based claim is time barred..

18

'designate specific facts showing that there is a genuine issue for trial.'" L.S.T., Inc. v. Crow, 49 F.3d 679 (11th Cir. 1995) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265, 274 (1986)). Consequently, Wynn must affirmatively show that there is a genuine issue of material fact regarding the defendants' alleged discriminatory conduct. Wynn has failed to proffer any evidence and, instead, merely relied on her pleadings and conclusory allegation. Hardees is accordingly entitled to summary judgment on Wynn's pay discrimination claim.

### 4. Discipline

Plaintiff has alleged that Hardees treated her differently for cash shortages than white employees and assigned her more rigorous managerial duties than her white counterpart. Hardees attacked not only the merit but also the underlying factual basis for these claims in its Motion for Summary Judgment and supporting brief. Wynn offered nothing in rebuttal other than a repeat of her general allegation. The court will accordingly grant summary judgment on all discriminatory discipline claims.

This 3rd day of March, 1997.

Robert B. Propst
Senior United States District Judge